**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| XTO Energy, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING EX PARTE** |
| | ) | **TEMPORARY RESTRAINING ORDER** |
| vs. | ) | |
| | ) | |
| Kenneth Schmidt, | ) | Case No. 4:09-cv-066 |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is the Plaintiff's "Motion for Temporary Restraining Order Without Notice"

filed on October 15, 2009.  See Docket No. 2.  The Plaintiff seeks a temporary restraining order

enjoining and restraining the Defendant from interfering in any way with the Plaintiff's attempts to

access, and use for geophysical operations, the following real property, located in Williams County,

North Dakota:

> Township 154 North, Range 96 West
> Sec. 8: N1/2
> Sec. 9: S1/2SW1/4
> Sec. 17: N1/2N1/2

I.    **BACKGROUND**

The plaintiff, XTO Energy, Inc., is an oil and gas exploration company that owns an interest

in the oil and gas leasehold estate or other rights in and under real property located in the state of North

Dakota.  XTO Energy retained Quantum Geophysical, Inc./Geokinetics USA, Inc. to conduct

geophysical operations on an area approximately 99 square miles in size, located in McKenzie,

Williams, and Mountrail Counties in North Dakota.  This project is known as the South Nesson 3D

Phase II area.  Geokinetics retained Erickson Contract Survey to survey the areas in advance of

Geokinetics' operations.  To date, Erickson Contract Survey has conducted survey operations on

approximately 62% of the South Nesson 3D Phase II and geophysical operations have commenced. The defendant, Kenneth Schmidt, owns property located in Williams County that is located within the South Nesson 3D Phase II area.  The Schmidt property is located at:

> Township 154 North, Range 96 West
> Sec. 8: N1/2
> Sec. 9: S1/2SW1/4
> Sec. 17: N1/2N1/2

Schmidt owns the surface estate of the property.  XTO Energy owns an interest in and to the oil and gas leasehold estate in and under the Schmidt property, granting XTO Energy the right to conduct geophysical operations on the Schmidt property.

The purpose of the geophysical operation is to gather data from deep beneath the surface of the earth to be processed and analyzed for use in oil and gas exploration activities.  XTO Energy contends that the most commonly used geophysical exploration device is the seismograph.  The seismograph measures the reflection, refraction, and velocity of seismic or shock waves created by explosive charges set off in holes in the earth or from vehicle-mounted vibrators.  XTO Energy utilizes seismographic surveys to conduct its geophysical operations in the South Nesson 3D Phase II area. Without a survey of the Schmidt property, Geokinetics is unable to commence its exploration activities on that tract of land.

In January 2009, Schmidt granted Cougar Land Services written permission to conduct seismographic exploration on the Schmidt property, including the right to ingress and egress for such purposes.  Schmidt placed certain conditions on his permission, including a 48-hour notice period. Schmidt was paid $2,800 in exchange for the agreement.

On behalf of XTO Energy, Geokinetics applied for and was granted a "geophysical exploration permit" by the North Dakota Industrial Commission which grants XTO Energy and its contractors the

right to conduct geophysical exploration activities in and under certain lands in North Dakota,
including the Schmidt property.  See N.D.C.C. § 38-08.1-04.1(1) ("A person may not engage in
geophysical exploration activities in this state without having first obtained a geophysical exploration
permit from the [North Dakota Industrial Commission].").  On September 11, 2009, pursuant to
N.D.C.C. § 38-08.1-04.1(5)[1], Cougar Land Services gave notice to Schmidt that it would be
commencing geophysical operations on the Schmidt property.  On September 23, 2009, before
Erickson Contract Survey entered the Schmidt property to commence its surveying operations,
Erickson Contract Survey called Schmidt to provide him with the 48-hour notice that Schmidt
requested in the January 2009 agreement with Cougar Land Services.  Schmidt did not object.

On or about September 28, 2009, Erickson Contract Survey entered the Schmidt property and
commenced its surveying operations.  The surveying operations included placing survey flags on the
Schmidt property to identify the exact locations of where the receivers and source instruments are to
be placed when the seismic operations begin.

On October 7, 2009, Erickson Contract Survey employees and others noticed that the stakes
which had previously been placed on the Schmidt property had been removed, thus inhibiting the
seismographic operations.  Erickson Contract Survey called Schmidt to inquire why the stakes had
been removed, and Schmidt informed Erickson Contract Survey that he would seek a court order to
prevent XTO Energy and its contractors from proceeding with the geophysical operations.  After that
phone call, XTO Energy and its contractors have not entered the Schmidt property.

On October 15, 2009, XTO Energy filed a complaint in federal court in which it brought a
claim for declaratory judgment and a claim for injunctive relief.  XTO Energy contends that Schmidt

---

[1] N.D.C.C. § 38-08.1-04.1(5) provides:  The permitting agent shall notify the operator of the land at least
seven days before the commencement of any geophysical exploration activity, unless waived by mutual agreement
of both parties.  The notice must include the approximate time schedule and the location of the planned activity.

has delayed its surveying activities and if XTO Energy is not allowed immediate access to the Schmidt property, XTO Energy may have to exclude the Schmidt property from its operations entirely. XTO Energy contends that if it is forced to exclude the Schmidt property from its operations, XTO Energy's survey will be missing data it agreed to provide to Erickson Contract Survey for oil and gas exploration activities in the area. XTO Energy also contends that the lack of geophysical data will have a detrimental effect on the operations for the South Nesson 3D Phase II; that the mineral owners and oil and gas leasehold owners of the Schmidt property will suffer harm; and that adjacent mineral owners and oil and gas leasehold owners will also suffer harm due to the lack of sufficient geophysical information. See Docket No. 3. Therefore, XTO Energy moves for a temporary restraining order enjoining and restraining Schmidt from interfering in any way with XTO Energy's attempts to access the Schmidt property for its geophysical operations.

## II.    LEGAL DISCUSSION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a temporary restraining order should be granted, the Court must look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. It is well-established that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors. Wachovia Sec., L.L.C. v. Stanton, 571 F. Supp. 2d 1014, 1031 (N.D. Iowa 2008). In determining whether preliminary injunctive relief should be granted, the Court is required to consider the factors set forth in Dataphase Sys., Inc., v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). Whether a preliminary injunction or temporary restraining order should be granted involves consideration of "(1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction,

4

(3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) the public interest."  Wachovia Sec., L.L.C., 571 F. Supp. 2d at 1032 (citing Dataphase Sys., Inc., 640 F.2d at 114).

It is well-established that the burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant.  Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989).  "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 503 (8th Cir. 1987)).


A.    **PROBABILITY OF SUCCESS ON THE MERITS**

When evaluating a movant's "likelihood of success on the merits" the Court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'"  Calvin Klein Cosmetics Corp., 815 F.2d at 503 (quoting Dataphase Sys., Inc., 640 F.2d at 113).  At this preliminary stage, the Court does not decide whether the party seeking the temporary restraining order will ultimately prevail.  PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007).  Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'"  Id. (quoting Dataphase Sys., Inc., 640 F.2d at 113).  The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success

5

on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

XTO Energy contends that it is likely to prevail on the merits of its declaratory judgment claim. XTO Energy seeks declaratory relief under the Declaratory Judgment Act codified at 28 U.S.C. § 2201. The Declaratory Judgment Act authorizes a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co. , 515 U.S. 277, 286 (1995). XTO Energy contends that it is likely to prevail because, under North Dakota law, the mineral estate is dominant over the surface estate, and because XTO Energy has the right to perform geophysical exploration based on a permit issued by the North Dakota Industrial Commission.

XTO Energy further argues that its mineral estate rights are dominant to Schmidt's surface estate rights. It is well-established in North Dakota that a property's mineral interests may be separated from the surface rights and may exist distinct from the ownership of the surface. See Slaaten v. Cliff's Drilling Co., 748 F.2d 1275, 1277 (8th Cir. 1984) (citing Beulah Coal Mining Co. v. Heihn, 180 N.W. 787, 789 (N.D. 1920)). When the mineral estate is severed from a property's surface estate, the mineral estate is dominant. Hunt Oil Co. v. Kerbaugh, 283 N.W.2d 131, 135 (N.D. 1979). "The mineral estate is dominant in that the law implies, where it is not granted, a legitimate area within which mineral ownership of necessity carries with it inherent surface rights to find and develop the minerals, which rights must and do involve the surface estate. Without such rights the mineral estate would be meaningless and worthless." Id. Therefore, the owner of the mineral estate retains the right to enter and use the surface estate for any purpose reasonably necessary to explore, develop, and

transport the minerals.  XTO Energy contends that it has the right to enter the Schmidt property and use as much of the surface estate on the property as is necessary to conduct the geophysical operations.

XTO Energy also contends that it has the right to perform geophysical exploration on the Schmidt property because it followed the proper procedures for obtaining an exploration permit. Under N.D.C.C. § 38-08.1-04.1(1), a company such as XTO Energy must apply for a permit to conduct geophysical exploration and the North Dakota Industrial Commission may issue an applicant a "geophysical exploration permit."  An applicant may not perform geophysical exploration without such a permit.  The landowner must be notified at least seven days before the commencement of geophysical exploration.  N.D.C.C. § 38-08.1-04.1(5).  XTO Energy contends that it applied for, and was issued, a permit to conduct geophysical exploration operations, and that XTO Energy provided Schmidt with proper notice.  At this early stage of the proceedings, the Court finds that under North Dakota law, XTO Energy's mineral estate rights are likely dominant to the surface rights owned by Schmidt, and that XTO Energy followed the proper procedures under North Dakota law to conduct its geophysical exploration operations.

In January 2009, Schmidt granted Cougar Land Services written permission to enter the Schmidt property for seismographic exploration.  The written agreement required that Schmidt be given 48-hours notice prior to any exploration conducted on the Schmidt property.  On September 23, 2009, Erickson Contract Survey notified Schmidt that the geophysical operations would commence, to which Schmidt did not object.  On or about September 28, 2009, Erickson Contract Survey entered the Schmidt property and began conducting its surveying operations.  On October 7, 2009, XTO Energy was first notified that Schmidt objected to the geophysical operations when it observed that the survey stakes which had previously been placed on the Schmidt property were removed.  The Court finds that at this preliminary stage of the litigation, and based on the information on file with the

Court, XTO Energy has established a sufficient likelihood of success on the merits.  Accordingly, the Court finds that this factor weighs in favor of the issuance of a temporary restraining order.

### B.   IRREPARABLE HARM

XTO Energy must next establish that there is a threat of irreparable harm if injunctive relief is not granted and that such harm is not compensable by money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." Johnson v. Bd. of Police Commissioners, 351 F. Supp. 2d 929, 945 (E. D. Mo. 2004). The party that seeks the temporary restraining order must show a significant risk of harm exists. Doe, 514 F. Supp. 2d at 1135.

The Eighth Circuit has held that a threatened loss of goodwill is sufficient to constitute irreparable harm. Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003). Also, other courts have concluded that the loss of an ongoing business "cannot be fully compensated by subsequent monetary damages" and "is not measurable entirely in monetary terms." Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc., 749 F.2d 124, 126 (2d Cir. 1984); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970). Courts have similarly found irreparable harm where a party is threatened with the loss of a business and customer goodwill. See Tom Doherty Associates, Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995); Ryko Mfg. Co. v. Eden Services, 759 F.2d 671, 673 (8th Cir. 1985) (affirming district court's finding that irreparable harm was shown and injunction was warranted when distributor would be possibly forced out of business).

XTO Energy contends that it will suffer irreparable harm if Schmidt is allowed to continue to prevent XTO Energy from entering the Schmidt property and conducting geophysical exploration

operations. XTO Energy argues that the costs of conducting the seismographic surveys exceed $3,500 per hour, and that if XTO Energy is not allowed to conduct the operations immediately, it may never do so because of the high costs of the surveys. XTO Energy also contends that if it is not allowed to conduct the seismic operations on the Schmidt property, it will have a detrimental effect on the mineral owners and oil and gas leasehold owners adjacent to the Schmidt property. Schmidt has threatened legal action against XTO Energy and its contractors if geophysical exploration operations are commenced on the Schmidt property and, therefore, XTO Energy faces potential legal action for conducting the geophysical operations.

The Court finds, at this early stage, that XTO Energy has shown that it will suffer significant harm to its ongoing geophysical exploration operations if it is not allowed to proceed with its plans for the Schmidt property. The Court further finds that at this preliminary stage of the litigation, XTO Energy has established that it will likely suffer irreparable harm if a temporary restraining order is not issued. Therefore, this factor also weighs in favor of the issuance of a temporary restraining order.

### C.     **BALANCE OF HARM**

XTO Energy contends that the request for a temporary restraining order will not harm Schmidt because Schmidt will be compensated for any damage to his property. XTO Energy argues that Schmidt will merely be prevented from further delaying XTO Energy's operations and from taking action against XTO Energy, Geokinetics, and Erickson Contract Survey employees who will enter the Schmidt property. However, if the temporary restraining order is not granted, XTO Energy contends that it will be forced to give up its planned operations, suffer a lengthy and costly delay in exercising its rights, or risk legal action against itself, its contractors, and its employees. The Court finds that the issuance of a temporary restraining order will not harm Schmidt, especially in light of the fact that he

9

is to be compensated for any damage to his property, and that the issuance of a temporary restraining order will prevent harm to XTO Energy.  Thus, this factor weighs in favor of the issuance of a temporary restraining order.


      **D.**      <u>**PUBLIC INTEREST**</u>

Finally, XTO Energy contends that the development and production of oil and gas is in the public interest.  According to N.D.C.C. § 38-08-01, it is "in the public interest to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas in the state . . . ."  Therefore, at this preliminary stage, this factor arguably weighs in favor of the issuance of a temporary restraining order.


**III.**      <u>**CONCLUSION**</u>

After carefully reviewing the entire record, the Court finds that the Plaintiff has met its burden of establishing the necessity of a temporary restraining order.  The Court **GRANTS** the Plaintiff's "Motion for Temporary Restraining Order Without Notice" and will reserve ruling on the request for a preliminary injunction until after the show cause hearing.

Based on the foregoing findings and conclusions, it is **ORDERED**:

    1)      That the Defendant and any persons or entities acting in concert with or on behalf of the Defendant, shall be restrained and enjoined during the pendency of this action from interfering with the Plaintiff's attempts to access the Schmidt property and use the property for geophysical exploration.

    2)      That the Defendant shall appear in Courtroom One of the U.S. District Court for the District of North Dakota, in Bismarck, North Dakota, on **Monday,**

**November 2, 2009 at 1:30 p.m.** to show cause under Rule 65 of the Federal Rules of Civil Procedure why he should not be restrained and preliminarily enjoined during the pendency of this action.

3)     That the Defendant may at any time file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure.  If such a motion is not filed within ten (10) days after service of this order, the temporary restraining order shall be deemed consented to based upon the grounds set forth above until further order of the Court.

4)     No bond shall be required to be posted by the Plaintiff before the temporary restraining order is effective.

5)     The Plaintiff shall arrange for the immediate service of this order together with the Plaintiff's "Motion for Temporary Restraining Order Without Notice" and supporting pleadings and affidavits, and shall promptly file proof of service with the Court.

Dated this 20th day of October, 2009.

                                        */s/  Daniel L. Hovland*
                                        Daniel L. Hovland, Chief Judge
                                        United States District Court